David J. Jordan (1751)
djordan@foley.com
Wesley F. Harward (15623)
wharward@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: (801) 401-8900

Randy T. Austin (6171)
raustin@kmclaw.com
Wade L. Woodard (18155)
wwoodard@kmclaw.com
Justin W. Starr (10708)
jstarr@kmclaw.com
KIRTON MCCONKIE PC
36 S. State Street, Suite 1900
Salt Lake City, UT 84111
Telephone:  (801) 328-3600

*Attorneys for The Church of Jesus Christ
  of Latter-day Saints, and Ensign Peak
  Advisors, Inc.*

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DANIEL CHAPPELL, MASEN CHRISTENSEN, and JOHN OAKS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, and ENSIGN PEAK ADVISORS, INC.<br><br>     Defendants. | **DEFENDANT ENSIGN PEAK ADVISORS, INC.'S MOTION TO DISMISS AND JOINDER IN THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' MOTION TO DISMISS**<br><br>Case No. 2:23-cv-794<br><br>The Honorable Ted Stewart |

**JOINDER**

Ensign Peak Advisors, Inc. ("Ensign Peak") hereby joins in The Church of Jesus Christ of Latter-day Saints' (the "Church") Motion to Dismiss.  For the sake of brevity, Ensign Peak does not repeat the arguments advanced by the Church and instead hereby incorporates those arguments by reference.  Ensign Peak submits the following Motion to Dismiss (the "Motion") based on allegations (or lack thereof) that are particular to Ensign Peak.

**TABLE OF CONTENTS**

INTRODUCTION & RELIEF REQUESTED ................................................................................1

SUMMARY OF RELEVANT ALLEGATIONS ..........................................................................1

ARGUMENT .................................................................................................................................3

I.      PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF
        LIMITATIONS....................................................................................................................3

II.     PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELEIF CAN BE
        GRANTED. .........................................................................................................................4

        A.      Plaintiffs' Breach of Fiduciary Duty Claim Fails. ...................................................4

                1.      Ensign Peak did not owe a fiduciary duty to Plaintiffs..............................4

                2.      The Utah Charitable Solicitations Act does not create a fiduciary duty (or a
                        private right of action). ...............................................................................5

        B.      Plaintiffs' Fraud-Based Claims Fail. .......................................................................6

                1.      Plaintiffs fail to plead necessary elements of fraud. ...................................7

                2.      Ensign Peak's SEC disclosures and IRS filings are unrelated to Plaintiffs'
                        claims. ........................................................................................................11

        C.      Plaintiffs Fail to State a Claim for Fraudulent Concealment. .................................11

        D.      Plaintiffs Fail to State a Claim for Unjust Enrichment Against Ensign Peak. ........12

CONCLUSION.............................................................................................................................13

4868-8134-5691.2

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085 (D. Utah 1992) ...............................10

*Am. Charities for Reasonable Fundraising Regulation, Inc. v. Olsen*, 731 F. Supp. 2d 1208 (D. Utah 2010) ...........................................................................................................................................5

*Am. Target Advertising, Inc. v. Giani*, 199 F.3d 1241 (10th Cir. 2000)..........................................5

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, 70 P.3d 35 .............................................. 7, 10

*Bright v. Sorensen*, 2020 UT 18, 463 P.3d 626 .......................................................................... 11

*Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806 (Utah 2007).....................3

*Daines v. Vincent*, 190 P.3d 1269 (Utah 2008)...............................................................................7

*Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580 (Utah 2000)................................................12

*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982 (10th Cir.1992) ....................................7

*Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 417 P.3d 95 (Utah 2018) ...............................................................................................................4

*Gaddy v. Corp. of President of Church of Jesus Christ of Latter-D*ay Saints, No. 2:19-CV-00554-RJS-DBP, 2023 WL 2665894 (D. Utah Mar. 28, *2023)* ............................................................. 6, 12

*Gaddy v. Church of Jesus Christ of Latter-day* Saints, No. 2:19-CV-00554-RJS, 2023 WL 4763981 (D. Utah, July 26, 2023)................................................................................................ 6, 12

*Gerwe v. Gerwe*, 424 P.3d 1113 (Utah App. 2018) .......................................................................7

*Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200 (D. Conn. 2000) .....................................1

*Hill v. Allred*, 28 P.3d 1271 (Utah 2001)........................................................................................3

*In re Edmonds*, 924 F.2d 176 (10th Cir.1991)................................................................................7

*Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963 (10th Cir. 1994) ...........3

*Jensen v. Cannon*, 473 P.3d 637 (Utah Ct. App. 2020)................................................................12

*Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965 (Utah 2015) ................4

*Pero v. Knowlden*, 2014 UT App. 220, 336 P.3d 55......................................................................4

4868-8134-5691.2

*Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249 (D. Utah 2017)..............................................3

*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir.1997).......................................7

*Stone v. Salt Lake City*, 356 P.2d 631 (Utah 1960) ...................................................9, 10

*Sumsion v. Bay Harbor Farm LC*, 2018 UT App 114, 427 P.3d 511 ...................................4

*Utah v. LeFevre*, 825 P.2d 681 (Utah Ct. App. 1992) ...............................................10

*Yazd v. Woodside Homes Corp.*, 143 P.3d 283 (Utah 2006).......................................12

**Statutes**

Utah Code § 13-22-1................................................................................................5

Utah Code § 13-22-15..............................................................................................5

Utah Code § 13-22-23..............................................................................................6

Utah Code § 13-22-8(1)...........................................................................................5

Utah Code § 78B-2-305...........................................................................................3

Utah Code § 78B-2-305(3) ......................................................................................3

Utah Code § 78B-2-307(3) ......................................................................................4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................6

Federal Rule of Civil Procedure 9(b)......................................................................7

**Other Authorities**

*Rev. Rul.* 78-88, 1978-1 C.B. 163, 1978 WL 41981 (1978).........................................8

Rest. of the Law, Charitable Nonprofit Orgs. § 2.01 comment a................................6

Rest. of the Law, Charitable Nonprofit Orgs. § 2.04 ................................................6

*Treas. Reg.* § 1.502-1(b)..........................................................................................8

4868-8134-5691.2

## INTRODUCTION & RELIEF REQUESTED

Plaintiffs claim the Church defrauded them by prudently setting aside a portion of donations in investments.  Plaintiffs inexplicably name the Church's investment manager, Ensign Peak, as a defendant even though they have no relationship with Ensign Peak, they did not donate any funds to Ensign Peak, and Ensign Peak made no representations to them.  Suing Ensign Peak is like suing a financial institution where a nonprofit organization maintains its funds.  Like other financial institutions, any duties Ensign Peak owed ran to the Church, not to Plaintiffs.  Thus, Plaintiffs have no conceivable claim against Ensign Peak.

For these reasons and others addressed below, the Court should dismiss Plaintiffs' Complaint against Ensign Peak in its entirety, with prejudice.[1]

## SUMMARY OF RELEVANT ALLEGATIONS

Plaintiffs are current or former members of the Church who, on October 31, 2023, filed a proposed class action complaint against the Church and Ensign Peak Advisors, Inc.  *See generally* Compl. (Docket 1).  Plaintiffs seek injunctive relief and damages for a variety of fraud-based claims centered on their dissatisfaction with the Church's management of their donations.[2]  Compl. ¶¶ 1, 92-132.  At the core, Plaintiffs' claim the Church's investment of portions of tithes

---

[1] Ensign Peak is imbued with the full panoply of the Church's First Amendment rights.  *See Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d 200, 211 (D. Conn. 2000) (holding that a Catholic liberal arts college was "sufficiently affiliated" with the Catholic Church to invoke the protections of the Free Exercise Clause).  The claims against Ensign Peak are therefore barred by the First Amendment for all the same reasons as the claims against the Church.  Ensign Peak incorporates by reference all First Amendment arguments made in the Church's separate motion to dismiss.

[2] Specifically, Plaintiffs assert claims for (1) Breach of Fiduciary Duty, (2) Fraud and Fraudulent Inducement, (3) Fraudulent Concealment, and (4) Unjust Enrichment as against both the Church and Ensign Peak.

1

and other donations is contrary to the purpose for which the funds were donated.  Compl. ¶ 30.

Plaintiffs allege that saving and investing a portion of donated funds, rather than spending all of

them immediately, is tantamount to "misusing the donations" and assert that they had "no reason

to ever suspect" that the Church "would take any portion of their donations and invest it into

Ensign . . . ."  Compl. ¶¶ 79, 99.

Plaintiffs' Complaint repeatedly attributes alleged statements and conduct to "defendants"

but makes very few allegations specific to Ensign Peak.  In fact, the only statement made by

Ensign Peak and referenced in the Complaint is found in its Articles of Incorporation, which state

that Ensign Peak is organized for religious, educational, and charitable purposes to benefit and

carry out the purposes of the Church within the meaning of the Internal Revenue Code.  Compl.

¶ 55.  The Complaint alleges that Ensign Peak is a non-profit entity created to hold and invest

donations made to the Church.  Compl. ¶ 5.  It further alleges that holding and investing the

Church's reserve funds is Ensign Peak's "only reason for existing."  Compl.  ¶¶ 55, 56.  Plaintiffs

also generally allege that Ensign Peak "concealed" the amount of its holdings and that it never

expended—only invested—funds.  Compl. ¶¶ 98, 106, 109, 118, 126.  The Complaint includes

extraneous reference to Ensign Peak's SEC disclosures and IRS filings, alleging that Ensign Peak

made improper filings, but fails to tie those filings to any cognizable claim.  Compl. ¶¶ 64-72.[3]

The claims against Ensign Peak fail as a matter of law because the claims are time-barred

and the Complaint is devoid of allegations connecting Ensign Peak to Plaintiffs' claims.

---

[3] The Complaint relies heavily on a highly-publicized "Letter to An IRS Director."  *See* Compl.
¶¶ 6, 14, 53, 55-72.  That report confirms that the Church immediately uses the vast majority of
donations: "The [Church] is famously tight lipped about what its total tithes and donations are,
but one [Ensign Peak] senior leader suspected in 2019 that they are $6-$7 billion annually with
maybe $5-$6 billion in expenses." Compl. ¶ 14 n. 4 (citing Lars Nielsen, "*Letter to an IRS
Director*," https://www.scribd.com/document/439385879/Letter-to-an0IRS-Director).

**ARGUMENT**

I.      **PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

Under Utah law, actions for a liability created by state statutes must be brought within three years.[4] Utah Code § 78B-2-305.  Similarly, a three-year limitations period applies to all common law claims grounded in fraud.  *Rabo Agrifinance, Inc. v. Bliss,* 227 F. Supp. 3d 1249, 1252 (D. Utah 2017) (citing Utah Code § 78B-2-305(3); *Hill v. Allred,* 28 P.3d 1271, 1276 (Utah 2001)).  The limitations period begins to run when the plaintiff "has actual knowledge of the fraud, or by reasonable diligence and inquiry should know the relevant facts of the fraud perpetrated against him."  *Rabo Agrifinance,* 227 F. Supp. 3d at 1253 (quoting *Colosimo v. Roman Catholic Bishop of Salt Lake City,* 156 P.3d 806, 811 (Utah 2007)).  The plaintiff need not know "the full extent of his injuries before the statute of limitations begins to run."  *Id.* at 1254 (quoting *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 969 (10th Cir. 1994)).

All of Plaintiffs' allegations against Ensign Peak (as with the Church) are based on information Plaintiffs admit they learned in the Letter to an IRS Director that was made public in December 2019.  *See* Compl. ¶¶ 6, 14 n.4 (citing Lars Nielsen, "Letter to an IRS Director," https://www.scribd.com/document/439385879/Letter-to-an-IRS-Director).  Thus, Plaintiffs knew, or by reasonable diligence should have known, of the alleged breach of fiduciary duty and fraud by Ensign Peak as of December 2019.  Accordingly, their claims for breach of fiduciary duty and fraud are time-barred.

---

[4] As discussed in Section II.A, Plaintiffs' claim for breach of fiduciary duty under Utah's Charitable Solicitations Act is barred by Utah law. However, if the Act was applicable to Plaintiffs' allegations, the claim must be brought within three years from the date Plaintiffs should have discovered the alleged breach.

4868-8134-5691.2

The same is true of their unjust enrichment claim.  "A claim for unjust enrichment is subject to a four-year statute of limitations." *Sumsion v. Bay Harbor Farm LC*, 2018 UT App 114, ¶ 39, 427 P.3d 511, 520 (citing Utah Code § 78B-2-307(3)).  Such a claim accrues when the claimants knew or should have known of the alleged inequity in the Church's receipt of the conferred benefit.  *See Pero v. Knowlden*, 2014 UT App. 220, ¶ 17, 336 P.3d 55, 59.

Assuming Plaintiffs allege that their tithing donations were made with expectation of an equitable return, which is necessary to state a claim for unjust enrichment, their claim is time-barred.  Plaintiffs made tithing donations to the Church over a period of ten years and received nothing of earthly value in return.  Compl. ¶¶ 73-77.  As such, Plaintiffs have always known that the Church and Ensign Peak retained their donations without conferring any benefit in return (as is the nature of a donation).  Because this discovery was available to Plaintiffs ten years ago, the statute of limitations was not tolled and has long-since expired.  Accordingly, every cause of action pleaded by Plaintiffs is barred by the applicable statute of limitations.

## II.      PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELEIF CAN BE GRANTED.

### A.      Plaintiffs' Breach of Fiduciary Duty Claim Fails.

#### 1.      Ensign Peak did not owe a fiduciary duty to Plaintiffs.

Fiduciary duties are implicated by certain special relationships.  *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 355 P.3d 965, 971 (Utah 2015) (citations omitted).  "A 'fiduciary relationship' exists between two parties when one of them is required to act for the benefit of the other on all matters within the scope of their relationship." *Id.* (citations omitted). Relationships in which Utah courts have found fiduciary duties arise include attorney-client, physician-patient, trustee-beneficiary, and insurer-insured. *Id.*; *Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 417 P.3d 95, 109 (Utah 2018).

4

Here, Plaintiffs do not allege any facts whatsoever that show a relationship between them and Ensign Peak, much less a fiduciary relationship.  There is no basis to find—and Plaintiffs do not even allege—that Ensign Peak was required to act for their benefit in any respect.  Moreover, Plaintiffs did not donate any funds to Ensign Peak.  They tithed to the Church, who then invested "some portion" of those funds through Ensign Peak.[5]  Compl. ¶¶ 5, 97.  No fiduciary duty can arise between Ensign Peak and Plaintiffs on these facts.

### 2.    The Utah Charitable Solicitations Act does not create a fiduciary duty (or a private right of action).

Plaintiffs assert that the Utah Charitable Solicitations Act ("UCSA") imposes a fiduciary duty on Ensign Peak "as the entity that (1) held" funds donated to the Church, (2) "would make expenditure of donated funds," and (3) "purportedly used such funds for charitable purposes."  Compl. ¶ 97.  Plaintiffs are wrong.  The UCSA imposes registration and disclosure requirements on certain charitable entities and professional fundraising consultants with the goal of reducing fraud and misrepresentation in the solicitation of charitable donations.  Utah Code § 13-22-1 (emphasis added), *et seq.*; *Am. Target Advertising, Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir. 2000); *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Olsen*, 731 F. Supp. 2d 1208, 1211 (D. Utah 2010).  The USCA, however, contains an express exemption for religious organizations[6] and it imposes no duties on investment managers.

The UCSA states, "[e]very person soliciting, collecting, or expending contributions for charitable purposes, and any officer, director, trustee, or employee of any person concerned with

---

[5] Plaintiffs' mere status as donors to the Church does not create a fiduciary relationship.

[6] Utah Code § 13-22-8(1) states that the registration requirement "does not apply to . . . a bona fide religious, ecclesiastical, or denominational organization . . . ."  And the disclosure requirements apply "as part of a charitable organization's application for registration or renewal of registration . . . ."  Utah Code § 13-22-15.

the solicitation, collection, or expenditure of those contributions, shall be considered to be a

fiduciary and acting in a fiduciary capacity." Utah Code § 13-22-23.  Even if Ensign Peak fits

into one of these categories, this fiduciary duty is owed *to the charity*, not to donors.  The

officers and directors of a charity are "assumed to be a fiduciary of the charity" and therefore

have a duty of loyalty to the charity.  Rest. of the Law, Charitable Nonprofit Orgs. § 2.01

comment a.  Their duty is to act "in the best interests of the charity in light of its purposes . . . ."

*Id.* § 2.02.[7]

In any case, the UCSA does not permit a private right of action.  *Gaddy v. Corp. of*

*President of Church of Jesus Christ of Latter-Day Saints*, No. 2:19-CV-00554-RJS-DBP, 2023

WL 2665894, at *22 (D. Utah Mar. 28, 2023), *motion for relief from judgment denied sub nom.*

*Gaddy v. Church of Jesus Christ of Latter-day Saints,* No. 2:19-cv-00554-RJS, 2023 WL

4763981 (D. Utah July 26, 2023).  Instead, only the Utah Attorney General's Office and

Department of Consumer Protection have the right to enforce the Act.  *Id.*  The UCSA does not

save Plaintiffs' fiduciary duty claim.

### B.     Plaintiffs' Fraud-Based Claims Fail.

Even if Plaintiffs' fraud-based claims against Ensign Peak were not time barred, the

Court's dismissal would still be required under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted.  Under Utah law, to bring a claim

sounding in fraud, a plaintiff must allege:

> (1) that a representation was made (2) concerning a presently
> existing material fact (3) which was false and (4) which the
> representor either (a) knew to be false or (b) made recklessly,
> knowing that there was insufficient knowledge upon which to base

---

[7] Interestingly, this includes a duty to "manage its assets that are held for investments as a prudent investor would in light of the purposes of the charity . . . ."  Rest. of the Law, Charitable Nonprofit Orgs. § 2.04.

> such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35, 40 (citation omitted; *Gerwe v. Gerwe*, 424 P.3d 1113, 1117 (Utah App. 2018) (quoting *Daines v. Vincent*, 190 P.3d 1269 (Utah 2008)).

Federal Rule of Civil Procedure 9(b) requires a party to state the "circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, Plaintiffs must set forth the "time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof." *In re Edmonds*, 924 F.2d 176, 180 (10th Cir.1991). "The purpose of Rule 9(b) is 'to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . .'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir.1992)).

### 1.      Plaintiffs fail to plead necessary elements of fraud.

Plaintiffs never allege that Ensign Peak made any representation to them. Plaintiffs do not allege that Ensign Peak made any representation about the use of donated funds, or that either Ensign Peak (or the Church) ever said donated funds would *not* be invested. In fact, Plaintiffs plead only one statement made by Ensign Peak, contained in its Articles of Incorporation. The Articles state that Ensign Peak is organized for religious, educational, and charitable purposes to benefit and carry out the purposes of the Church within the meaning of the Internal Revenue Code. Compl. ¶ 55. Plaintiffs further allege "Ensign has never fulfilled its purported mission for COP nor functioned as a charitable entity. Instead, for more than two

decades, it has done only one thing: it has invested donations collected by COP, without ever disbursing these funds toward any charitable purpose." *Id.* ¶ 56.

Whether Ensign Peak has ever fulfilled its charitable purpose is not actionable in fraud. Even if it was, the claim would fail because Ensign Peak fulfills its charitable purpose by investing funds. Investing for a religious organization is a charitable purpose. Indeed, many charities have large investment portfolios. The IRS has long recognized that "Congress does not intend for ordinary or routine investment activities of a section 501(a) organization in connection with its securities portfolio to be treated as the conduct of a trade or business . . . ." *Rev. Rul.* 78-88, 1978-1 C.B. 163, 1978 WL 41981 (1978). (Section 501(a) says organizations described in section 501(c) are tax exempt.) In other words, Congress and the IRS do not consider the investment activities of a tax-exempt church to be "the conduct of a trade or business."

Nor is there any bar to a tax-exempt organization choosing to locate its routine investment function in a separate entity, *even if that is all the separate entity does*. The IRS and the courts have recognized that an affiliate of a section 501(c)(3) institution is itself a tax-exempt charitable organization as an "integral part" of its related 501(c)(3) entity if it performs a function on behalf of that entity that the entity could do itself, such as investing. For example, the IRS's regulations state that an entity whose sole function is operating an electric power plant to provide power to a tax-exempt university was itself a tax-exempt charity. *Treas. Reg.* § 1.502-1(b). Similarly, Revenue Ruling 78-41 states that a trust formed to hold *and invest* reserve funds to pay malpractice claims brought against a hospital "is operated exclusively for charitable purposes and is exempt from tax under section 501(c)(3) of the Code." *Rev. Rul.* 78-41, 1978-1 C.B. 148, 1978 WL 41966 (1978). The ruling explains that "Section 501(c)(3) of the Code provides for the exemption from Federal income tax of organizations organized and operated

8

exclusively for charitable purposes," and that by serving as a "repository for [the hospital's] funds" and because it is "performing a function that the hospital could do directly," the trust was an "integral part" of the hospital entitled to be treated like the hospital.  *Id*.

The same holds true for Ensign Peak.  It exists as a "repository" for the Church's reserve funds and "perform[s] a function that the [Church] could do directly," which was the case before Ensign Peak was created in 1997.  As Plaintiffs allege, Ensign Peak is a "non-profit entity" that only exists to invest the Church's funds.  Compl. ¶¶ 55-56.  Plaintiffs do not allege that Ensign Peak provides investment services to any organization other than the Church and related entities.  Plaintiffs' allegations establish that Ensign Peak is, in fact, an "integral part" of the Church and therefore is treated under the law as operating "exclusively for charitable purposes," even if all it does is invest.  *Rev. Rul.* 78-41, 1978-1 C.B. 148, 1978 WL 41966 (1978).

Not only is investing a permitted charitable purpose under the tax code, but it is also good stewardship of donated funds.  The Utah Supreme Court has acknowledged, consistent with the federal tax regulations discussed above, that a tax-exempt charitable organization is permitted to invest its funds and that donors should anticipate this.  *Stone v. Salt Lake City*, 356 P.2d 631, 633-34 (Utah 1960).  The court in *Stone* held that while charitable donations to a church must "ultimately be applied" to the "purposes stated in its articles of incorporation," "it is obvious that all of the funds the Church collects would not be [used] immediately . . . for [that] purpose[]." *Id.*  Instead, "[i]t is but common sense and common knowledge that there is need for the exercise of management of such funds for the ultimate accomplishment of the purposes stated." *Id.* at 634.  Moreover, good stewardship of donated funds "may well entail the keeping of collected funds in savings accounts, bonds, real estate or *any type of investment* which, in the judgment of those in charge, best suits that purpose." *Id.* (emphasis added).

4868-8134-5691.2

Thus, Ensign Peak's articles of incorporation which require it to operate exclusively for religious, educational, and charitable purposes "within the meaning of Section 501(c)(3) of the Internal Revenue Code" cannot form the basis of a fraud claim because the statement is true.

Additionally, Plaintiffs do not allege that they ever read or were even aware of Ensign Peak's 1997 Articles. Plaintiffs' ignorance of the Articles prohibits them from alleging that the Articles were (1) false statements made to them, (2) with intent to induce donations, (3) on which they relied in giving tithes to the Church.

Indeed, Plaintiffs do not allege the Articles were directed at potential donors at all. Intent to induce reliance is an essential element of a fraud claim in Utah. *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 14, 70 P.3d 35, 40 (citation omitted). Plaintiffs make a few vague assertions about Ensign Peak's state of mind. Each assertion alleges generally that Ensign Peak, together with the Church, "hid" information about Ensign Peak to "conceal the extent of its holdings" and "evade reporting requirements." Compl. ¶¶ 68, 69, 71. Nowhere do Plaintiffs allege Ensign Peak said or did anything with the intent to induce Church members to give tithes or other donations.

Moreover, Plaintiffs could not have materially relied on the Articles. Materiality is an element of fraud and requires the plaintiff to "believe[] the misrepresentation to be true, and include[] it as a factor" in his decision-making process. *Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085, 1094 (D. Utah 1992) (citing *Utah v. LeFevre*, 825 P.2d 681, 687 (Utah Ct. App. 1992)). Plaintiffs fail even to allege they ever received or read these documents, let alone that they relied upon them in connection with any donation. *See generally id.* Nor could any such reliance be reasonable. Accordingly, Plaintiffs fraud claims against Ensign Peak fails as a matter of law.

4868-8134-5691.2

2.      **Ensign Peak's SEC disclosures and IRS filings are unrelated to Plaintiffs' claims.**

Plaintiffs allege that Ensign Peak filed improper 13(f) disclosures with the SEC that did not fully reveal the market value of the securities it manages.  Compl. ¶¶ 69-71.  That matter was resolved with the SEC.  *See* Compl. ¶¶ 71-72.  Plaintiffs also refer to Ensign Peak's IRS Forms 990-T for 2007 and 2010, which state that the "[b]ook value of all assets at end of year" was "$1,000,000" and the "[b]ook value of all assets at end of year" was "over $1,000,000."  Compl. ¶¶ 64-67.  They allege that "in actuality, the book value of Ensign's assets at the time was approximately $38,000,000,00" and "approximately $40,000,000,00" respectively.  *Id.*

Plaintiffs fail to connect these allegations with any cause of action. To do so would be quite a challenge, given that (1) Plaintiffs have no relationship to Ensign Peak and (2) Ensign Peak's SEC disclosures and IRS filings have nothing to do with Plaintiffs' donations.  Plaintiffs' fraud claims are centered on the Church's solicitation of donations, alleged false representations about donations, and Plaintiffs' reliance on those alleged misrepresentations.  Ensign Peak did not solicit donations or make representations about donations.  And Plaintiffs certainly do not plead that they knew of, or relied upon, the SEC disclosures or IRS filings in making donations to the Church.  As such, the Complaint fails to make any relevant use of the allegations regarding the SEC and IRS documents.  The Complaint's inclusion of Ensign Peak's SEC disclosures and IRS filings do not bear on Plaintiffs' fraud claims, nor any other claims made by Plaintiffs.

C.      **Plaintiffs Fail to State a Claim for Fraudulent Concealment.**

It is unclear whether Utah law identifies fraudulent concealment as a standalone cause of action.  *Bright v. Sorensen*, 2020 UT 18, ¶ 34, 463 P.3d 626, 634. To the extent fraudulent concealment is distinct from similar fraud claims, Plaintiffs must allege that (1) the Church had a legal duty to communicate information; (2) the Church knew of the information; (3) the Church

11

4868-8134-5691.2

failed to disclose the information; and (4) the nondisclosure was material.  *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 2:19-CV-00554-RJS-DBP, 2023 WL 2665894, at \*19 (D. Utah Mar. 28, 2023), *motion for relief from judgment denied sub nom. Gaddy v. Church of Jesus Christ of Latter-day Saints,* No. 2:19-CV-00554-RJS, 2023 WL 4763981 (D. Utah July 26, 2023) (citing *Jensen v. Cannon*, 473 P.3d 637, 643 (Utah Ct. App. 2020)).

Plaintiffs assert Ensign Peak owed a duty to disclose its holdings and other unidentified "similar material information" to Plaintiffs because Ensign Peak owed a fiduciary duty to them. Compl. ¶¶ 115, 119.  Their claim fails because Ensign Peak had no duty to make any disclosures to them.  Plaintiffs do not allege facts establishing any relationship with Ensign Peak, let alone a fiduciary relationship.  Where "no relationship between the parties exists" at all, even "[a] person who possesses important, even vital, information of interest to another has no legal duty to communicate the information . . . ."  *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 287 (Utah 2006).  To find that such a duty exists would be to find that all banks and investment firms have a duty to disclose to the public their charitable investment portfolios.  Plaintiffs' claim for fraudulent concealment/nondisclosure must fail.

### D.      Plaintiffs Fail to State a Claim for Unjust Enrichment Against Ensign Peak.

In Utah, a claim for unjust enrichment requires proof of (1) a benefit conferred, (2) that the conferee appreciates the benefit, and (3) that the conferee accepts the benefit under such circumstances as to make it inequitable for it to retain it without payment of its value.  *Desert Miriah, Inc. v. B&L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000).  Plaintiffs' claim fails because they have not alleged that they conferred any benefit on Ensign Peak.  They made donations to the Church.  Without such a conferral, Plaintiffs cannot claim they are entitled to payment for the

12

value of the benefit they conferred.  This claim, like all of Plaintiffs' other claims against Ensign Peak, should be dismissed.

## **CONCLUSION**

For all the reasons set forth herein, defendant Ensign Peak respectfully requests the Court GRANT its instant motion and DISMISS Plaintiffs' claims in their entirety.

DATED this 9th day of January, 2024.

FOLEY & LARDNER LLP

/s/ *David J. Jordan*
David J. Jordan
Wesley F. Harward

KIRTON MCCONKIE PC
Randy T. Austin
Wade L. Woodward
Justin W. Starr

*Attorneys for The Church of Jesus Christ of
 Latter-day Saints and Ensign Peak Advisors, Inc.*

13

4868-8134-5691.2

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2024, that I am employed by the law firm Foley & Lardner, LLP and that I caused a true and correct copy of the foregoing **DEFENDANT ENSIGN PEAK ADVISORS, INC.'S MOTION TO DISMISS AND JOINDER IN THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' MOTION TO DISMISS** to be filed with the Court's electronic filing system, which sent notification and effected service on all counsel of record.

_/s/ Stacy Kamaya_

4868-8134-5691.2