BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION

| | |
|---|---|
| IN RE: LDS CHURCH TITHING LITIGATION | MDL DOCKET NO. |

## MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

### I. INTRODUCTION

Plaintiff Joel Long is a former member of the Church of Jesus Christ of Latter Day Saints ("LDS Church") and has filed an action against the LDS Church for misusing and misappropriating tithes. Specifically, as detailed in Plaintiff's complaint, Plaintiff and members of the Class he seeks to represent paid tithes to the LDS Church based upon representations by church representatives that the tithes would only be used for charitable, religious purposes in line with the LDS Church's published mission, and would not be used for commercial, profit-generating endeavors.

There are now five similar cases filed throughout the United States, including four class actions with overlapping classes and relief sought, and one individual case seeking similar relief on an individual basis (Collectively, the "LDS Cases"). *See* Schedule of Actions, Exhibit 1. All of the LDS Cases seek to answer the core question of whether the LDS Church misrepresented its intent and usage of tithes paid by members. Pursuant to 28 U.S.C. § 1407, this panel is authorized to transfer civil actions involving one or more common questions of fact to any district for coordinated or consolidated pretrial proceedings, and should do so for the reasons set forth herein.

## II. LEGAL STANDARD

Centralization pursuant to section 1407 is appropriate in scenarios where: (1) there are "civil actions that share common factual questions and are pending across various districts"; and (2) such consolidation is conducive to "the convenience of both parties and witnesses, and aids in the just and efficient management of the actions." *See* 28 U.S.C. § 1407. The objective of this centralization is to "avoid repetitive discovery, avert conflicting rulings in the pretrial phase, and to economize the resources of the involved parties, their legal representation, and the judiciary." *In re: Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 437 F. Supp. 3d 1365, 1365 (J.P.M.L. 2020); *see also* Manual for Complex Litigation (Fourth) § 20.131 (2004), referencing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968).

## III. ARGUMENT

### A. This Matter Readily Meets the Requirements for Consolidation and Transfer Under Section 1407

#### 1. There Are Numerous Common Questions of Law and Fact

At their core, all of the LDS Cases challenge the LDS Church's practice of making representations that it would not use tithes for commercial, non-religious purposes, and then doing exactly that. It is thus unsurprising that there is enormous similarity in the Classes the class complaints seek to represent, and the theories of recovery across all of the cases. Specifically:

| Case (Jurisdiction) | Primary Class Definition | Claims |
|---|---|---|
| Brawner (TN) | All persons within the United States (including its Territories and the District of Columbia) who paid tithing to the LDS Church from a time to be determined but no later than April 5, 2003 through the present. | <ul><li>Fraudulent Misrepresentation</li><li>Negligent Misrepresentation</li><li>Breach of Fiduciary Duty</li><li>Unjust Enrichment</li><li>Tennessee Consumer Protection Act</li><li>Civil Conspiracy</li></ul> |

| Chappell (UT) | All persons in the United States who donated money to Defendants from January 1, 1998 through the date the Class is certified. | <ul><li>Breach of Fiduciary Duty</li><li>Fraud & Fraudulent Inducement</li><li>Fraudulent Concealment</li><li>Unjust Enrichment</li></ul> |
|---|---|---|
| Huntsman (CA) | Not applicable[1] | <ul><li>Fraud</li></ul> |
| Long (IL) | All persons within the United States (including its Territories and the District of Columbia) who paid tithing to the LDS Church from a time to be determined but no later than April 5, 2003 through the present. | <ul><li>Fraudulent Misrepresentation</li><li>Fraudulent Concealment</li><li>Negligent Misrepresentation</li><li>Breach of Fiduciary Duty</li><li>Unjust Enrichment</li><li>Illinois Consumer Fraud and Deceptive Business Practices Act</li><li>Civil Conspiracy</li></ul> |
| Risdon (WA) | All persons within the United States (including its Territories and the District of Columbia) who paid tithing to the LDS Church from a time to be determined but no later than April 5, 2003 through the present. | <ul><li>Fraudulent Misrepresentation</li><li>Breach of Fiduciary Duty</li><li>Unjust Enrichment</li><li>Washington Consumer Protection Act</li><li>Civil Conspiracy</li></ul> |

The discovery that will be necessary to assess liability on all of the fraud-based claims is substantially identical. Moreover, there is substantial overlap between those facts and those that will form the underpinning of the fiduciary duty and unjust enrichment claims asserted in the other actions. Thus, the core evidence in all of the LDS Cases is the same. The overwhelming overlap between the claims and classes in the various cases to be consolidated leads to the inexorable conclusion that consolidation is the only way to efficiently handle these claims. *In re Primevision Health Contract Litig.*, 206 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (fraud actions consolidated to eliminate duplicative discovery).

---

[1] While the *Huntsman* case does not seek certification of a class, the facts that will need to be developed to prove liability on its fraud claim are identical to those that will need to be developed in the class cases for their fraud-based claims.

Once the facts are developed, the impact of that conduct is likewise consistent amongst each of the LDS Cases. In each of the cases, a determination will need to be made as to whether Defendants' conduct was fraudulent and/or in violation of consumer protection statutes. In most of the cases, there will also need to be an evaluation of whether the conduct constitutes a breach of fiduciary duty, whether Defendants have been unjustly enriched, and whether Defendants have engaged in a civil conspiracy. And, ultimately, there will need to be a determination of the appropriate remedy to make Plaintiffs and the Classes they seek to represent whole. Transfer and consolidation will ensure that all of these determinations are made in an efficient, manageable, consistent manner.

### 2. Transfer and Consolidation Will Avoid the Unnecessary Duplication of Discovery and Conserve the Resources of the Parties

Because of the overwhelming factual overlap in the allegations of the LDS Cases, the consolidation of these actions would unquestionably eliminate the duplication of discovery and wasting of time and money that will inevitably result in the event of piecemeal litigation in multiple venues. This strongly supports transfer and consolidation of the LDS Cases. *In re Primevision Health Contract Litig.,* 206 F. Supp. 2d at 1370; *In re Mirtazapine Patent Litig.,* 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (centralization of cases necessary to eliminate duplicative discovery and conserve the resources of the parties, their counsel and the judiciary).

### 3. There Exists a Risk of Inconsistent Rulings

Similarly, in the absence of consolidation, there exists the possibility that different judges overseeing these cases may rule differently on procedural or even substantive issues that will impact the arc of the litigation in a material way. Apart from abstract considerations of fundamental fairness and consistency, that circumstance promotes an environment where litigants with interests that are aligned may find themselves in conflict. Consolidation provides

the opportunity for a single judge and collection of counsel to proceed with the litigation in an orderly and consistent manner. *See e.g., In re Am. Gen. Life & Accident Ins. Co. Retiree Benefits "ERISA" Litig.*, 387 F. Supp. 2d 1361, 1363 (J.P.M.L. 2005) (consolidation ordered in part to prevent inconsistent rulings).

### 4. There Are Enough Cases on File to Support Consolidation and Transfer

The panel has repeatedly recognized that where, as here, there are multiple putative class action cases with overlapping classes pending in different districts, transfer and consolidation can make sense even when there are relatively few cases. *See e.g., Cardoso v. IDT Corp. (In re IDT Corp. Calling Card Terms Litig.)*, 278 F. Supp. 2d 1381 (J.P.M.L. 2003) (two cases with overlapping putative classes sufficient to warrant consolidation); *In re Pub. Air Travel Tariff Litig.*, 360 F. Supp. 1397, 1399-400 (J.P.M.L. 1973) (five cases); *In re Morgan Stanley & Co.*, 471 F. Supp. 2d 1353 (J.P.M.L. 2006) (six cases). The five cases that would be consolidated are more than sufficient to warrant consolidation.

## B. The Central District of California is the Appropriate Venue for this Consolidated Litigation

### 1. The Most Advanced Case is Pending in the Central District of California

One critically important factor in determining the appropriate transferee forum is to consider whether pending litigation in that forum is more advanced than other actions. *See In re FMC Corp. Patent Litigation*, 422 F. Supp. 1163, 1165 (Jud. Pan. Mult. Lit. 1976); *see also In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 424 F. Supp. 504, 507 (Jud. Pan. Mult. Lit. 1976). Most of the cases that are a part of this proposed consolidated proceeding have been

filed in the relatively recent past, between Halloween of this year and the present, and none of those cases have substantively advanced beyond the filing of the complaint.

There is, however, one notable exception – the *Huntsman* case – which has been pending in the Central District of California since March 22, 2021 before Hon. Stephen V. Wilson. Judge Wilson is no doubt more familiar with the matter than other judges overseeing the new filings. This factor strongly supports consolidation in the Central District. *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 398 F. Supp. 2d 1361, 1362 (J.P.M.L. 2005) (choosing transferee district in part because cases there had been pending more than a year longer than other cases and judge had developed familiarity with the issues); *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) (selecting CDCA in part because case there was more procedurally advanced); *Najarian v. Charlotte Russe, Inc. (In re Clarlotte Russe, Inc., FACTA Litig.)*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) (selecting CDCA in part because of advanced state of litigation and court's familiarity with the litigation).

### 2. The Central District of California is Convenient for Travel

It is anticipated that some litigants may propose the District of Utah as transferee venue, as it is the location of the headquarters of the LDS Church. While the location of parties and witnesses is a factor to be considered, it does not significantly move the needle here, where there are plaintiffs spread out throughout the country, many in different states than the Defendants.

Indeed, the reality of modern complex litigation is that it is uncommon for party representatives to personally attend pretrial proceedings, and witnesses are typically deposed where they reside, regardless of where a case is being litigated. *In re A. H. Robins Co.*, 438 F. Supp. 942, 943-44 (J.P.M.L. 1977). Counsel involved in this litigation are spread throughout the

country. Accordingly, most of the people involved in the active litigation of this case will traveling for hearings and depositions. With that reality in mind, it is important to note that comparatively speaking, the Central District of California, which is located in Los Angeles, California, is a far more convenient venue than the District of Utah from a travel perspective.

Most litigants will be traveling by air, and Los Angeles provides dramatically more options in this space. Specifically, Los Angeles International Airport (LAX) alone has an average of 833 scheduled flights per day, compared to only 430 at Salt Lake City (SLC).[2] Other Los Angeles-area airports like Burbank (BUR), Long Beach (LGB) and even Orange County (SNA) provide access to even more options.[3]

Additionally, the Los Angeles area has 1,000 hotels with more than 98,600 hotel rooms, making it the 6th largest hotel market in the United States. It has an enormous quantity and variety of hotel accommodations, easily accommodating all travel, whether for a night or a month.[4] Salt Lake City, in contrast, has 20,630 hotel rooms, only 8000 of which are in the downtown area.[5] Collectively, all of these factors favor consolidation in the Central District of California, in Los Angeles. *In re Worldcom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002) ("litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services.").

### 3. The Central District of California Has Significant Experience with Multidistrict Proceedings

---

[2] *See* Exhibit 2, comparing data collected from www.flightradar24.com on January 5, 2024.
[3] While the Salt Lake City region does have another airport in nearby Provo, it is a municipal airport that services airlines like Allegiant Air and Breeze Airways, which are not typically used for business travel.
[4] https://www.discoverlosangeles.com/media/facts-about-la (Accommodations Section) (last visited January 4, 2024)
[5] https://www.visitsaltlake.com/press-research/facts-info/ (last visited January 4, 2024)

Particularly as compared to the District of Utah, the Central District of California has significantly more experience overseeing complex multidistrict proceedings. Since 1975, the Central District of California has seen 112 MDL proceedings through to completion,[6] and has 5 more currently pending.[7] Multidistrict proceedings are far more unusual in Utah, with that district only seeing 4 in nearly half a century, with no MDL cases currently pending, and the last terminated 8 years ago. Judge Wilson, who is currently presiding over the *Hunstman* matter, has MDL experience, presiding over *In re Live Concert Antitrust Litig.*, MDL No. 1745.[8] In contrast, Judge Stewart, who currently presides over the *Chappell* matter, has not yet handled an MDL.

Beyond the judges, however, multidistrict litigation brings with it a collection of logistical and administrative complications that no one in the District of Utah – from judges and their staffs, to the clerk's office, to all other personnel providing critical support – has had occasion to manage in nearly a decade. These challenges are a normal part of the workday in the Central District of California, which routinely presides over complex multidistrict matters. On balance and in consideration of all of the foregoing, the Central District of California is much more familiar with the administration of a complex MDL proceeding, and is thus particularly well-equipped to handle this case.

### 4. The Central District of California Strikes the Perfect Cultural Balance With Respect to this Dispute as Compared to Other Potential Venues

---

[6] JPML Cumulative Terminated Report, 2022 (https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Report%20Cumulative%20Terminated%20MDLs.pdf)
[7] Pending MDLs by District as of January 2, 2024 (https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-2-2024.pdf)
[8] JPML Terminated Report, 2022, *supra.*

8

Even though this case is not about religion, in a case of this nature that is tangentially related to closely held cultural belief systems, it is important to consider the atmospherics in assessing an appropriate venue. By a huge margin, the most significant concentration of LDS Church members reside in Utah, but the state with the second largest population is California, giving California a real and tangible connection to the members of the Class.

| State | Mormon Population[9] |
|---|---|
| California | 734,989 |
| Utah | 2,161,526 |

Of the two states with the largest number of class members, however, California possesses several clear advantages over Utah in terms of its ability to handle a case involving the LDS Church. Most notably, despite the large number of LDS Church members in raw numbers in California, they make up a comparatively small percentage of the population.

| State | Mormon Population | Overall Population[10] | Percentage |
|---|---|---|---|
| Utah | 2,161,526 | 3,380,800 | 63.9% |
| California | 734,989 | 39,029,342 | 1.8% |

This is an important distinction in the context of a case of this sort. The reality is that the influence of the LDS Church upon all facets of life in Utah is overwhelming. The LDS Church owns significant property, countless businesses, media outlets, and is a significant social and economic driver for the region. Further, as retired Utah journalist Rod Decker indicated in his book, *Utah Politics: the Elephant in the Room*, "Mormon dominance is the most important fact about Utah politics, and it determines political outcomes. People don't talk about it, but that's what it is."[11]

---

[9] https://wisevoter.com/state-rankings/mormon-population-by-state/ (last visited January 4, 2024)
[10] https://www.census.gov/data/tables/time-series/demo/popest/2020s-state-total.html#v2022 (last visited January 4, 2024)
[11] https://www.sltrib.com/news/politics/2021/01/14/latter-day-saints-are/

9

California, in contrast, has a significant enough Mormon population to have an interest in the resolution of the suit, but it does not have the cultural influence that may inadvertently seep into the litigation as in Utah. Proceedings in California are far less likely to be impacted by atmospherics outside of the litigation itself.

To be clear, the undersigned counsel are not suggesting that any of the federal judges sitting in Utah could not fairly and impartially oversee a case involving the church. Instead, it is that allowing a Court in California, where there exists a significant but not overwhelming LDS presence, to hear the matter frees Utah court personnel from the pressures – express or implied – that may come from external local forces that might call that impartiality into question.

## IV. CONCLUSION

The LDS Church cases uniformly challenge the LDS Church's representations and use of tithes for non-religious, commercial purposes. The overwhelming commonality in legal and factual issues across the cases underscores the need for a unified pretrial process. The risks of duplicative discovery and inconsistent rulings are significant if these cases proceed separately, potentially leading to inefficiency and unfair outcomes. Consolidation is thus crucial to ensure efficient judicial management, eliminate redundant discovery, and avoid conflicting pretrial rulings.

Moreover, the Central District of California emerges as the most suitable venue for this consolidated litigation. The *Huntsman* case in this district is far more procedurally advanced than any other case, and Judge Wilson's familiarity with the issues strengthens this choice. Additionally, the logistical and administrative capabilities of the Central District, along with its geographical convenience and balanced cultural representation, make it an ideal location for these proceedings.

Accordingly, transfer and consolidation in the Central District of California not only align with the legal standards set forth in 28 U.S.C. § 1407 but also serve the interests of justice and judicial efficiency. Thus, this Panel should grant the motion for transfer and consolidation, and consolidate the LDS Church Cases in the Central District of California.

Dated: January 5, 2024

*s/ James J. Rosemergy*
James J. Rosemergy
CAREY, DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Ph: 314-725-7700
Fax: 314-721-0905
jrosemergy@careydanis.com

*Counsel for Plaintiff Joel Long in S.D Illinois Case No. 3:23-cv-03950-NJR*